IN THE SUPREME COURT OF THE STATE OF IDAHO

**Docket No. 48985**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, April 2023 Term |
| | ) | |
| v. | ) | Opinion filed:  June 7, 2023 |
| | ) | |
| SEAN L. ANDERSON, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Second Judicial District of the State of Idaho, Idaho County. Gregory FitzMaurice, District Judge.

The judgment of conviction is <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender, Boise, for Defendant-Appellant. Sally J. Cooley argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Plaintiff-Respondent. Andrew V. Wake argued.

_____

ZAHN, Justice.

Sean Larry Anderson appeals his conviction and sentence for aggravated assault on a police officer. Anderson argues that the district court erred by instructing the jury on a different theory of assault than what was alleged in the charging Information. Next, Anderson argues that the district court erred by refusing to give his proposed jury instruction on the misdemeanor offense of discharge of a firearm aimed at another. Finally, Anderson contends that the district court imposed an excessive sentence. We affirm Anderson's judgment of conviction and hold that the district court did not abuse its sentencing discretion.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On July 18, 2020, at approximately 2:45 a.m., Lewis County Deputy Sheriff Wilkinson was traveling west on Highway 12 when he encountered Anderson, who was driving in the opposite direction. As Anderson was passing the officer, Anderson slowed down and turned on his

1

high beams. Wilkinson subsequently turned around and initiated a traffic stop. Anderson stopped in the middle of Highway 12. As Wilkinson approached Anderson's truck, he noticed a firearm next to Anderson. Wilkinson requested Anderson's driver's license, insurance, and registration. Anderson refused to provide them. Wilkinson then explained that Anderson could go to jail for resisting and obstructing by failing to provide his license, insurance, and registration. In response, Anderson drove away.

Wilkinson returned to his truck, requested assistance, and followed Anderson. Three other officers from different jurisdictions responded to assist with the pursuit. During the pursuit, Anderson called 9-1-1 and asked to be connected with Idaho County Sheriff Doug Giddings. Anderson told the dispatcher that, if the police tried to stop him, "people are going to die here." The dispatcher put Anderson through to Giddings. Anderson asked Giddings to call off the deputies and told Giddings that, if Anderson stopped his truck, he would "shoot people." Giddings told Anderson that the officers were not his deputies and urged Anderson to stop his truck.

The officers trailing Anderson eventually stopped his truck on a dead-end road. Wilkinson positioned his truck in front of Anderson's and stepped out with his weapon drawn. Wilkinson saw Anderson step out of his truck with a shotgun. Wilkinson yelled, "put the gun down" and "I will shoot." To which, Anderson replied, "I know you will."

Anderson placed his shotgun between the driver's side door and front windshield and fired towards Wilkinson. Anderson's shotgun recoiled or kicked back but, within seconds, Anderson again placed the shotgun between the door and windshield. The officers returned fire, hitting Anderson and causing him to drop the shotgun. The officers called for medical assistance and later recovered a shotgun, a 40-caliber handgun, an AR-10 rifle, an AR-15 rifle, magazines, bullets, and bullet-proof vests from Anderson's truck and from his person.

The State charged Anderson with aggravated assault on a peace officer in violation of Idaho Code sections 18-902(a), -905, -906, and -915(1)(b), and alleged a sentencing enhancement pursuant to Idaho Code section 19-2520 for the use of a deadly weapon in the commission of aggravated assault. Before trial, Anderson requested a jury instruction on the offense of misdemeanor discharge of a firearm aimed at another pursuant to Idaho Code section 18-3305. The State opposed the instruction. The district court declined to give the requested instruction.

The district court provided its proposed jury instructions to the parties before trial. Proposed Jury Instruction No. 13 addressed the elements of an assault:

An "assault" is committed when a person:

    (1) unlawfully attempts, with apparent ability, to commit a violent injury on the person of another; or

    (2) intentionally and unlawfully threatens by word or act to do violence to the person of another, with an apparent ability to do so, and does some act which creates a well-founded fear in the other person that such violence is imminent.

Anderson's attorney objected to the instruction and requested the district court to modify it to include only subsection (1) because that was the only definition implicated by the allegation in the Information. The State responded that the entire instruction should be given because the State had not alleged a specific theory of assault and argued the jury could rely on either theory of assault in considering the charge. The district court took the matter under advisement.

Anderson's attorney reasserted his objection to the proposed instruction the following day. The State argued that the Information alleged that Anderson committed assault by aiming a shotgun and firing it at Deputy Wilkinson; therefore, both definitions of assault in Jury Instruction No. 13 were applicable. The district court denied Anderson's request to modify the instruction and gave the proposed instruction to the jury.

The jury found Anderson guilty of aggravated assault upon a peace officer with a deadly weapon. The district court sentenced Anderson to a unified sentence of eighteen years, with twelve years fixed. Anderson subsequently moved to reduce his sentence pursuant to Idaho Criminal Rule 35(b). The district court denied the motion. Anderson timely appealed.

## II.    ISSUES ON APPEAL

1. Whether the district court's jury instruction on the elements of assault created a fatal variance.
2. Whether the district court erred by refusing to instruct the jury on the offense of discharge of a firearm aimed at another.
3. Whether the cumulative error doctrine applies and requires reversal of Anderson's conviction.
4. Whether the district court abused its sentencing discretion.

## III.    ANALYSIS

**A. The district court's jury instruction on the elements of assault did not create a fatal variance.**

Anderson argues that the district court created a fatal variance by instructing the jury on two theories of assault when the Information only charged him with assault under one of the theories. Anderson contends that the fatal variance relieved the State from proving the allegations

3

contained in the charging document. The State concedes that there was a variance, but argues the variance was not fatal because Anderson had notice of the jury instruction before trial.

"Jury instructions should match the allegations in the charging document as to the means by which a defendant is alleged to have committed the charged crime. Failure to do so creates a variance. A variance becomes fatal when it violates due process." *State v. Bernal*, 164 Idaho 190, 194, 427 P.3d 1, 5 (2018) (citations omitted). The existence of an impermissible variance between a charging instrument and the jury instructions is a question of law over which we exercise free review. *State v. Johnson*, 145 Idaho 970, 972, 188 P.3d 912, 914 (2008).

Determining whether a jury instruction created a fatal variance requires this Court to engage in a two-step analysis. *State v. Yang*, 167 Idaho 944, 947, 477 P.3d 998, 1001 (Ct. App. 2020). "First, the appellate court determines whether there was a variance between the information used to charge the crime and the instruction presented to the jury." *Bernal*, 164 Idaho at 194, 427 P.3d at 5 (citing *State v. Gas*, 161 Idaho 588, 592, 388 P.3d 912, 916 (Ct. App. 2016)). "Second, if a variance does exist, then the court examines whether it rises to the level of prejudicial error requiring reversal of the conviction, i.e., whether it is fatal." *Id.* (citation omitted). Reversal is necessary when the variance "deprives the defendant of the right to fair notice or leaves him or her open to risk of double jeopardy." *Id.* (footnote omitted) (quoting *Gas*, 161 Idaho at 592, 388 P.3d at 916). A variance between the charging document and the jury instruction is fatal when the record suggests the possibility that the defendant was misled or hindered[1] in the preparation or presentation of his defense. *Johnson*, 145 Idaho at 972, 188 P.3d at 914.

Anderson's variance argument is premised on the proposition that, while Idaho Code section 18-901 sets out two theories of assault, the State only charged him under one of those theories. That code section defines assault as:

> (a)    An unlawful attempt, coupled with apparent ability, to commit a violent injury on the person or another; or
>
> (b)    An intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act

---

[1] This Court has previously employed the term "embarrassed" when assessing whether a variance was fatal. *See State v. Windsor*, 110 Idaho 410, 418, 716 P.2d 1182, 1190 (1985) ("The notice element of the *Berger* standard requires courts to determine whether the record suggests the possibility that the defendant was misled or embarrassed in the preparation or presentation of his defense." (citing *Berger v. United States*, 295 U.S. 78, 82–84 (1935))). However, "embarrassed" does not accurately describe the circumstance when a variance is fatal. *See Boydstun v. State*, 259 So. 2d 707, 708 (Miss. 1972) ("The word 'embarrass' in this context does not refer to personal emparrassment [sic] of the judge or officer of the court, but to hindering or impeding him."). Therefore, moving forward, we will use the term "hindered" rather than "embarrassed" when assessing whether a variance is fatal.

4

which creates a well-founded fear in such other person that such violence is imminent.

The parties refer to the theory set forth in subsection (a) as "assault-by-attempt" and to the theory set forth in subsection (b) as "assault-by-threat." The State, in Part I of the Information against Anderson, alleged:

PART I
AGGRAVATED ASSAULT UPON A PEACE OFFICER
Idaho Code §§ 18-901(a), 905, 906, 915(1)(b), a Felony

That the Defendant, SEAN LARRY ANDERSON, on or about July 18, 2020, in Idaho County, Idaho, did unlawfully and with apparent ability, attempt to commit a violent injury upon the person of Deputy Walter Wilkinson of the Lewis County Sheriff's Office, with a deadly weapon or instrument, a shotgun, by aiming and firing at and in the direction of Deputy Wilkinson, knowing or having reason to know that Deputy Wilkinson was a peace officer.

At trial, the district court gave a jury instruction that included both theories of assault. The State concedes there was a variance between the charging document and the jury instruction defining assault.

We agree that the record reveals a variance between the Information and the jury instruction concerning assault. The charging document specifically cited to Idaho Code section 18-901(a) and alleged that Anderson attempted to commit a violent injury upon Wilkinson under the "assault-by-attempt" definition. However, the district court gave a jury instruction at trial that defined assault to include both the "assault-by-attempt" definition contained in Idaho Code section 18-901(a) and the "assault-by-threat" definition in section 18-901(b). This inconsistency between the charging document and the jury instruction constituted a variance.

The second step of our analysis examines whether the variance was fatal, which requires us to determine whether Anderson was deprived of fair notice of the charges against him. *Bernal*, 164 Idaho at 194, 427 P.3d at 5. As previously mentioned, a defendant has been deprived of fair notice if the defendant was misled or hindered in the preparation or presentation of his or her defense. *Id.*

Anderson contends he was deprived of fair notice because the charging document did not specifically charge him with violating section 18-901(b). Anderson also contends that, because the charging document did not reference section 18-901(b), he had no prior notice that the prosecutor would assert in his closing argument that the State had proven Anderson was guilty of both assault-by-attempt and assault-by-threat. This Court rejected a similar argument in *Bernal*.

5

In *Bernal*, the defendant had an altercation with another man, during which he pulled a knife and twice lunged at the other man. The State charged Bernal with three crimes, including aggravated assault with a deadly weapon under Idaho Code sections 18-901(a) and 18-905(a). *Bernal*, 164 Idaho at 193, 427 P.3d at 4. At Bernal's trial, the court gave a jury instruction that included both definitions of assault—assault-by-attempt and assault-by-threat. *See id.* at 195, 427 P.3d at 6.

Similar to Anderson's argument here, Bernal asserted on appeal that the variance between the charging document and the jury instruction was fatal. This Court rejected Bernal's argument because the factual allegations in the charging document encompassed both theories of assault and, therefore, put him on notice that both theories were at issue:

> [W]e conclude the variance was not fatal because Bernal had notice that the assault-by-threat theory was also at issue—the information alleged Bernal "with a deadly weapon," "attempt[ed] to stab Gustavo Becerra with a knife." This allegation in the information provided notice to Bernal that the State may also prove its case under an assault-by-threat theory. Specifically, assault-by-threat is committed when one "does some act which creates a well-founded fear in the other person." Thus, Bernal was not misled . . . in the preparation or presentation of his defense.

*Id.* (citation omitted). This analysis is equally applicable to the facts of this case.

In *Bernal*, this Court explained that the factual allegations in the charging document—that the defendant attempted to stab another with a deadly weapon—provided notice that the State could also establish assault under an assault-by-threat theory. *Id.* Similarly, in this case, the charging document alleged that Anderson attempted "to commit a violent injury upon the person of Deputy Walter Wilkinson . . . with a deadly weapon or instrument, a shotgun, by aiming and firing at and in the direction of Deputy Wilkinson[.]" As in *Bernal*, these facts encompassed both theories of assault. Pointing a shotgun at Wilkinson and firing it in his direction were acts that would create a well-founded fear in another that violence was imminent. The facts set out in the charging document therefore put Anderson on notice that both theories of assault were at issue. While there was a variance between the charging document and the jury instruction, we hold that the variance was not fatal.

Anderson argues that *Bernal* is distinguishable because it involved a knife instead of a gun. That distinction was irrelevant to our reasoning in *Bernal*. Nothing in that case suggests that the holding was dependent on the defendant's use of a knife. The salient facts in *Bernal* were that the defendant used a deadly weapon and attempted to stab another, which constituted an act that

created a well-founded fear in the other person. The charging Information in this case contains similar allegations—that Anderson intentionally pointed a deadly weapon at Wilkinson and fired it in the direction of Wilkinson. The acts alleged in the charging document would create a well-founded fear in another that violence was imminent. The fact that the deadly weapon used in this case was a gun instead of a knife does not change the analysis.

**B. The district court did not err in refusing to instruct the jury on the offense of discharge of a firearm aimed at another.**

Anderson also argues that the district court erred when it declined to give his proposed jury instruction on the misdemeanor offense of discharge of a firearm aimed at another. Anderson proposed the jury instruction in advance of trial and argued that the allegations in the charging document concerning aggravated assault on a peace officer, if proven, would also establish the elements of discharge of a firearm aimed at another. The district court denied Anderson's request after concluding that the Information did not allege that Anderson's actions were both "intentional" and "without malice," which are elements of discharge of a firearm aimed at another.

On appeal, Anderson argues that the district court erred because all the elements of the misdemeanor offense are found in the charging document. Moreover, Anderson argues that the language "without malice" in the misdemeanor offense is not an additional element, but instead a clarification that malice is not an element of the crime.

In response, the State first argues that Anderson failed to preserve his argument regarding the "without malice" language. If the argument was preserved, the State argues that Anderson's interpretation of the elements of discharge of a firearm aimed at another is incorrect. Finally, the State argues that, even if discharge of a firearm aimed at another is an included offense, there is no reasonable interpretation of the evidence that would support a finding that Anderson committed discharge of a firearm aimed at another but did not commit aggravated assault on a peace officer.

*1. Anderson failed to preserve his "without malice" argument.*

As a preliminary matter, we address the State's argument that Anderson failed to argue to the district court that "without malice" was not an element of the crime of discharge of a firearm aimed at another. The State contends that, by failing to raise the argument below, Anderson failed to preserve the argument for appeal. Anderson contends that the State has mischaracterized his argument below. He asserts that he did not claim "without malice" was an element of the offense, but instead that the State's failure to allege malice established that he acted without malice.

7

This Court will "not reverse a trial court's decision based on an argument that was not presented below." *State v. Hoskins*, 165 Idaho 217, 224, 443 P.3d 231, 238 (2019) (citation omitted). "[A] party preserves an issue for appeal by properly presenting the issue with argument and authority to the trial court below and noticing it for hearing or a party preserves an issue for appeal if the trial court issues an adverse ruling. Both are not required." *State v. Miramontes*, 170 Idaho 920, 924–25, 517 P.3d 849, 853–54 (2022) (emphasis omitted). "This Court can hear refined legal arguments regarding an issue heard and decided by the court below, but in fairness to the district court and the opposing party, we cannot usurp the district court's role by deciding new legal issues in the first instance." *Siercke v. Siercke*, 167 Idaho 709, 716, 476 P.3d 376, 383 (2020) (citation omitted).

Prior to trial, Anderson proposed a jury instruction on the misdemeanor offense of discharge of a firearm aimed at another. The State opposed the requested instruction. In his briefing to the district court in support of the requested instruction, Anderson argued that the allegations in the charging document established the elements of Idaho Code section 18-3305, titled "Discharge of Arms Aimed at Another":

> To prove Discharge of a Firearm Aimed at Another, *the following elements must exist:* (1) the discharge of any firearm, (2) without injury to any person, *(3) while intentionally, without malice, aimed at or toward any person.* Each of these elements are [sic] found within the charging document. First, Mr. Anderson discharged a firearm by firing a shotgun at and in the direction of Deputy Wilkinson. Second, there was no injury to any person based on the charging document. Third, by stating that Mr. Anderson attempted to commit a violent injury upon the person of Deputy Wilkinson, it is clear that Mr. Anderson was acting intentionally. There is no mention or evidence of malice in the information, and therefore, it ought to be assumed that no malice existed.

(Emphasis added.) The record establishes that, before the district court, Anderson argued that the elements of discharge of a firearm aimed at another included that he acted without malice.

On appeal, Anderson omits the "without malice" language from the elements of misdemeanor discharge of a firearm aimed at another and argues the elements are instead: (1) intentionally discharging a firearm, (2) aimed at another, (3) without injury to any person. Anderson now argues to this Court that the "without malice" language "is not an additional element, but a clarification that malice is not an element."

Anderson did not argue to the district court that the "without malice" language was a clarification rather than an element of the crime. To the contrary, Anderson argued before the

district court that "without malice" *was* an element of the crime and that the district court should assume the element was encompassed in the Information because the State did not allege Anderson acted with malice. Accordingly, the district court's analysis of the requested jury instruction treated "without malice" as an element of the crime.

On appeal, Anderson now contends the district court erred because "without malice" *was not* an element of the crime of discharge of a firearm aimed at another. This is a new and different argument, not a refinement of the argument he raised below. This Court will "not reverse a trial court's decision based on an argument that was not presented below." *Hoskins*, 165 Idaho at 224, 443 P.3d at 238 (citation omitted). Because Anderson failed to preserve this argument for appeal, we decline to address his argument that "without malice" is not an element of discharge of a firearm aimed at another.

2. *The district court did not err when it declined to instruct the jury on discharge of a firearm aimed at another.*

The district court denied Anderson's requested jury instruction after determining that discharge of a firearm aimed at another is not an included offense because the Information did not allege that Anderson's actions were "intentional" and "without malice."

Anderson asserts the district court erred in rejecting the instruction and repeats his argument that the allegations in the charging document established the elements of discharge of a firearm aimed at another. Specifically, Anderson argues that the Information alleged: (1) Anderson intentionally discharged a firearm, (2) aimed at Deputy Wilkinson. Anderson argues these allegations are sufficient to establish discharge of a firearm aimed at another because the State did not assert anyone was injured. However, Anderson does not reassert his argument that the State's failure to allege malice established that he acted without malice. We presume this is due to his new argument on appeal that "without malice" is not an element of the offense. For the reasons noted previously, we decline to consider this argument because it has not been preserved.

The State concedes on appeal that the district court erred when it determined that the Information did not establish the "intentional" element of discharge of a firearm aimed at another. However, the State contends the district court did not err in rejecting the proposed instruction because the Information did not allege that no one was injured or that Anderson acted without malice.

"The determination of whether a particular crime is an included offense of the crime charged involves a question of law over which this Court exercises free review." *State v. Curtis*,

130 Idaho 522, 523, 944 P.2d 119, 120 (1997) (citation omitted). Idaho Code section 19-2132(b) provides the court shall instruct the jury with respect to an included offense if:

> (1) Either party requests such an instruction; and
>
> (2) There is a reasonable view of the evidence presented in the case that would support a finding that the defendant committed such lesser included offense but did not commit the greater offense.

"'There are two theories under which a particular offense may be determined to be a lesser-included offense of a charged offense': the statutory theory and the pleading theory." *State v. McIntosh*, 160 Idaho 1, 4, 368 P.3d 621, 624 (2016) (quoting *State v. Sanchez–Castro*, 157 Idaho 647, 648, 339 P.3d 372, 373 (2014)). Anderson based his argument solely on the pleading theory.

Under the pleading theory, "an offense is included within another if the charging document alleges facts that, if proven, also necessarily prove the elements of the lesser-included offense." *McIntosh*, 160 Idaho at 5, 368 P.3d at 625 (citing *State v. Flegel*, 151 Idaho 525, 529, 261 P.3d 519, 523 (2011)). "The pleading theory does not look at evidence adduced at trial, only the language of the charging document." *State v. Weatherly*, 160 Idaho 302, 305, 371 P.3d 815, 818 (Ct. App. 2016) (citing *State v. McKinney*, 153 Idaho 837, 841, 291 P.3d 1036, 1040 (2013)).

> On the felony of aggravated assault upon a peace officer, the charging document alleged:
>
> That the Defendant, SEAN LARRY ANDERSON, on or about July 18, 2020, in Idaho County, Idaho, did unlawfully and with apparent ability, attempt to commit a violent injury upon the person of Deputy Walter Wilkinson of the Lewis County Sheriff's Office, with a deadly weapon or instrument, a shotgun, by aiming and firing at and in the direction of Deputy Wilkinson, knowing or having reason to know that Deputy Wilkinson was a peace officer.

Idaho Code section 18-3305 establishes the offense of discharge of a firearm aimed at another:

> Any person who shall discharge, without injury to any person, any firearm, while intentionally, without malice, aimed at or toward any person, shall be guilty of a misdemeanor, and shall be liable to a fine of not more than one thousand dollars ($1,000), or imprisonment in the county jail not to exceed six (6) months, or both, at the discretion of the court.

Anderson's argument that the Information established the elements of discharge of a firearm aimed at another is unpersuasive. The charging Information does not indicate that Anderson discharged a gun: (1) without injury to any person and (2) without malice. Accordingly, two of the elements of discharge of a firearm aimed at another are missing from the Information.

Anderson argues that the Information did not allege injury, thus establishing the "without injury to any person" element. Anderson's argument misconstrues the pleading theory. The

10

pleading theory relies on the language of the charging document, not its omissions, to prove the elements of the lesser-included offense. *See McIntosh*, 160 Idaho at 6, 368 P.3d at 626 ("The case law addressing both theories is clear that lesser-included charges *must be found within* the offense's statutory definition or pleading documents." (Emphasis added.)). The Information does not allege a lack of injury or a lack of malice. As a result, discharge of a firearm aimed at another is not an included offense of aggravated assault of a peace officer under the pleading theory.

Because we hold that Anderson has not established that discharge of a firearm aimed at another is a lesser-included offense under the pleading theory, we need not address Anderson's argument that a reasonable view of the evidence would support a finding that Anderson committed discharge of a firearm aimed at another but did not commit aggravated assault on a peace officer.

## C. The district court did not abuse its sentencing discretion.

The district court sentenced Anderson to a unified term of eighteen years, with twelve years fixed. Anderson argues that the district court abused its sentencing discretion because it failed to properly consider "the nature of the crime, his considerable remorse, alcohol abuse, and his family support." The State argues that the district court properly sentenced Anderson given the seriousness of the offense.

A "sentence fixed within the limits prescribed by the statute will ordinarily not be considered an abuse of discretion by the trial court." *McIntosh*, 160 Idaho at 8, 368 P.3d at 628 (quoting *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982)). To determine if there was an abuse of discretion, this Court considers whether the trial court: "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018). If "a sentence is within statutory limits, an appellant has the burden of showing a clear abuse of discretion by the court imposing the sentence." *McIntosh*, 160 Idaho at 8, 368 P.3d at 628 (quoting *State v. Jackson*, 130 Idaho 293, 294, 939 P.2d 1372, 1373 (1997)). "To show an abuse of discretion, the defendant must show that in light of the governing criteria, the sentence was excessive, considering any view of the facts." *Id.* (citation omitted). The governing criteria are: "(1) protection of society; (2) deterrence of the individual and the public generally; (3) the possibility of rehabilitation; and (4) punishment or retribution for wrongdoing." *Id.* (quoting *State v. Broadhead*, 120 Idaho 141, 143, 814 P.2d 401, 403 (1991), *overruled on other grounds by State*

*v. Brown*, 121 Idaho 385, 825 P.2d 482 (1992)). "This Court will set aside the sentence only where reasonable minds could not differ as to the excessiveness of the sentence." *State v. Farwell*, 144 Idaho 732, 736, 170 P.3d 397, 401 (2007) (quoting *State v. Stover*, 140 Idaho 927, 933, 104 P.3d 969, 975 (2005)).

The statutory maximum for aggravated assault on a peace officer is thirty years. *See* I.C. § 18-915(1)(b). The district court sentenced Anderson to a unified term of eighteen years, with twelve years fixed. Therefore, Anderson's sentence is fixed within the limits prescribed—which ordinarily is not considered an abuse of discretion. *See McIntosh*, 160 Idaho at 8, 368 P.3d at 628. In order to establish that the district court abused its discretion in sentencing him, Anderson must establish that reasonable minds would agree that his sentence is excessive considering any view of the facts.

Anderson has not met his burden. In announcing its sentence, the district court discussed the seriousness of the offense and the need to deter others from this type of behavior. "The nature of the offense is considered primarily to determine whether the severity of the sentence is warranted." *Id.* at 9, 368 P.3d at 629. In this case, after being stopped by law enforcement, Anderson refused a lawful demand to provide his driver's license, insurance, and registration. When informed that he could be charged with resisting and obstructing for refusing the lawful demand, Anderson drove away. He then took law enforcement on a low-speed chase and only stopped when he got to the end of a dead-end road. At that point, rather than surrendering, Anderson stepped out of his truck with a shotgun, aimed it at law enforcement who had surrounded his vehicle, and fired. He then prepared to fire for a second time. There is a significant public interest in protecting police from assaults by the general public and deterring others from engaging in similar conduct.

The district court recognized mitigating factors, including Anderson's loving relationship with his wife and support within his community. Further, and contrary to Anderson's argument on appeal, the district court expressly acknowledged that Anderson had an "alcohol problem." Additionally, the district court noted that Anderson had "many good attributes" and community and family support.

Notwithstanding these considerations, the district court determined that Anderson needed a significant period of incarceration for his violent actions. The district court noted that Anderson's "action caused or threatened harm to others." Additionally, the district court stated that he could

not tell from the evidence submitted at trial "that circumstances like this will not reoccur" in Anderson's situation. Finally, the district court considered the fact that Anderson told Sheriff Giddings that, if he stopped his truck, he was going to shoot people. The district court stated that a period of incarceration was necessary to deter Anderson, as well as others, from these types of actions and discussed that sentencing Anderson to no period of incarceration would depreciate "the seriousness of the offense."

The record demonstrates that the district court considered the sentencing factors prior to imposing its sentence and reached its decision by an exercise of reason. Anderson has failed to establish that his sentence is unreasonable under any view of the facts. We therefore conclude that the district court did not err in sentencing Anderson.

## IV.    CONCLUSION

The judgment of conviction is affirmed. The district court's jury instruction on the elements of assault did not constitute a fatal variance. The district court did not err in refusing to give Anderson's proposed jury instruction on the misdemeanor offense of discharge of a firearm aimed at another. Finally, the district court did not abuse its sentencing discretion.

Chief Justice BEVAN, and Justices BRODY, STEGNER, and MOELLER CONCUR.